FILED

07/21/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0538

DA 25-0538

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 159N

EDWARD KAHLE and CATHERINE KAHLE,

        Plaintiffs and Appellants,

    v.

ESTATE OF FLORENCE TOSCH and
KORRIE FOLEY,

        Defendants and Appellees.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
                  In and For the County of Lincoln, Cause No. DV-25-38
                  Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Edward Kahle and Catherine Kahle, Self-Represented, Rexford,
                Montana

        For Appellees:

                Jeffrey D. Ellingson, Kaufman Vidal Hileman Ellingson, PC,
                Kalispell, Montana

                        Submitted on Briefs: December 24, 2025

                              Decided:  July 21, 2026

Filed:

                        _____
                                  Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Edward and Catherine Kahle (Kahles) appeal from the June 27, 2025 Order entered in the Nineteenth Judicial District Court, Lincoln County, granting the Estate of Florence Tosch (Estate) and Korrie Foley's motion to dismiss. We affirm.

¶3 The substantive facts of this dispute are set forth in this Court's Opinion in *Estate of Tosch v. Kahle*, 2026 MT 146, 429 Mont. 76, ___ P.3d ___. We only recount the pertinent procedural history and substantive facts of the underlying dispute here as necessary. Korrie Foley (Korrie) at all times in the course of this protracted dispute acted in her capacity as the personal representative of the Estate. The Estate filed a complaint in Cause Number DV-22-99 with the District Court in June 2022 seeking possession of a residence in Trego, Montana, (Trego Property) which the Kahles were renting before the death of Florence Tosch (Florence). The Kahles thereafter forged Florence's signature on a purported 2019 lease with option to purchase the Trego Property (2019 Lease/Option) and then persuaded a third party who had a title interest in the Trego Property to execute a 2021 lease with option to purchase (2021 Lease/Option). The Kahles then filed the 2021 Lease/Option with the Lincoln County Clerk and Recorder, thereby clouding title to the Trego Property. The Estate accordingly amended its complaint for possession to include

2

claims for compensatory and punitive damages for deceit and fraud and for slander of title as well as a declarative judgment that the 2019 Lease/Option is void ab initio.

¶4     The District Court held a hearing for possession of the Trego Property in October 2022. The Estate's expert witness testified that he would not rely on the authenticity of the 2019 Lease/Option because it was a copy with an unavailable original and the document contained two different file types which an authentic document cannot contain. Edward Kahle (Edward) had also made numerous statements that were inconsistent with having a legal option to purchase the Trego Property when he expressed anxiety about being able to continue residing there after Florence's passing. The District Court found by a preponderance of evidence that the 2019 Lease/Option was a forged document and awarded possession of the Trego Property to the Estate on November 4, 2022. The Kahles vacated the Trego Property on December 3, 2022, under a civil standby of the sheriff's office. Initially, Korrie offered to pack the Kahles' personal property that they would be unable to remove by their deadline to vacate and store it for one month free of charge. The Kahles responded by contending that it would be in the parties' mutual interest to leave much of their personal property at the Trego Property pending a motion to stay their eviction filed with this Court. Upon discovering the amount of personal property that the Kahles left behind, Korrie elected to mitigate the Estate's damages and organize and store the Kahles' personal property at the Trego Property. Korrie then emailed the Kahles the statutory procedure for property abandoned by a former tenant stating that she would follow this procedure and requested that the Kahles respond within 10 days whether they intended to retrieve their property and then provide a date for retrieval within seven days

3

thereafter. The Kahles did not respond with a description of their personal property they intended to retrieve until February 11, 2023, and included grossly inflated values of their remaining personal property. The Kahles retrieved some of their personal property on May 13, 2023.

¶5 On May 30, 2023, the Kahles filed a complaint in Cause Number DV-23-101 with the District Court against the Estate for return of their personal property and security deposit as well as reimbursement for fuel which they had purchased for the Trego Property shortly before their eviction. In essence, this complaint alleged that the Estate had tortiously converted the Kahles' personal property and sought to relitigate issues from their residential tenancy at the Trego Property. The District Court consolidated DV-23-101 into DV-22-99 upon the Estate's motion on March 13, 2024. The parties thereafter appeared at a bench trial held on August 29 and 30, 2024, before the District Court.

¶6 At trial, the parties testified as to the authenticity of the 2019 Lease/Option and the circumstances surrounding the Kahles' eviction from the Trego Property. The District Court found the testimony of Korrie to be credible in all respects and the testimony of Edward to lack credibility in general and in particular to the 2019 Lease/Option and the existence and valuation of the Kahles' personal property remaining at the Trego Property. Korrie testified that she did not anticipate that the Kahles would leave so much of their personal property after they vacated when she made her original offer to store their remaining personal property. Korrie further explained how she calculated the Estate's labor and storage costs for organizing and storing the Kahles' property, which the Kahles refused to pay. Korrie then testified regarding to the damages caused by the Kahles to the

4

Trego Property through their tenancy and then slander of title. The Kahles clouded title to the Trego Property for three years, preventing the Estate from selling it under far better marketable conditions compared to August 2024 when they executed a quitclaim deed to the Estate. Edward testified that he had based the value of the Kahles' personal property on sentimental and subjective replacement costs, not fair market value. The Estate's expert appraiser testified that she valued the Kahles' personal property to be worth approximately $7,000. In its February 19, 2025 Findings of Fact and Conclusions of Law, the District Court held that the Estate established by clear and convincing evidence that Edward committed actual fraud, as defined under § 27-1-221, MCA, and that the Estate acted reasonably with respect to the Kahles' personal property and was relieved of any obligation to return what remained after May 13, 2023, upon the Kahles' failure to pay the Estate its labor and storage costs. The District Court provided a procedure to transfer the Kahles' remaining personal property from the Trego Property to the Kahles.

¶7 The Kahles appealed the District Court's June 26, 2025 Judgment awarding the Estate compensatory damages, attorney's fees, and costs of suit. We affirmed and held: (1) the Estate established by clear and convincing evidence that the Kahles committed actual fraud by forging the 2019 Lease/Option; (2) the Estate lawfully observed the Montana Residential Landlord Tenant Act (MRLTA) in its post-eviction dealings with the Kahles and that their personal property was statutorily abandoned; (3) the District Court heard substantial evidence in support of the Estate's damages and did not abuse its discretion in its award of compensatory damages; and (4) the District Court properly

5

concluded it had the legal authority to award the Estate attorney's fees and did not abuse its discretion in doing so.

¶8 The Kahles filed an amended complaint in Cause Number DV-25-38 against the Estate and Korrie personally in April 2025 seeking damages for conversion and intentional infliction of harm arising from the personal property they abandoned at the Trego Property. The District Court dismissed with prejudice the Kahles' complaint upon the Estate's motion to dismiss reasoning that the Kahles's complaint was precluded under claim preclusion.

¶9 On appeal the Kahles argue that they did not discover the factual basis for their allegation that Korrie and the Estate converted the Kahles' personal property in order to furnish the Trego Property for short-term rentals until trial. The Kahles further contend that in the original matter they claimed a breach of contract based on a gift offer that Korrie initially made to store the property that the Kahles could not remove from the Trego Property by their deadline to vacate and their claim in DV-25-38 for conversion is a separate claim with different remedies than a breach of contract. The Kahles seek compensatory damages as well as damages for emotional harm for the loss of use of their personal property left at the Trego Property. The Kahles also seek punitive damages under a theory that Korrie acted with actual malice regarding their personal property.

¶10 "We review a lower court's decision on a motion to dismiss de novo." *Est. of Athy v. EVI Kalispell, LLC*, 2026 MT 3, ¶ 9, 426 Mont. 20, 582 P.3d 598. "A motion to dismiss under M. R. Civ. P. 12(b) effectively admits all well-pleaded allegations in the complaint; therefore, we construe the complaint in the light most favorable to the plaintiff taking all

6

factual allegations as true." *Est. of Athy*, ¶ 9. We review a court's application of claim preclusion de novo. *Denturist Ass'n of Mont. v. State, Dep't of Lab. & Indus.*, 2016 MT 119, ¶ 8, 383 Mont. 391, 372 P.3d 466.

¶11 The judicial policy behind claim preclusion, or res judicata, is to "prevent parties from incessantly waging piecemeal, collateral attacks on judgments[.]" *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267. Claim preclusion bars a second suit involving the same parties or their privies based on the same cause of action where a final judgment on the merits has been issued in the first suit. *Denturist Ass'n of Mont.*, ¶ 11. The elements of claim preclusion are:

> (1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same and relate to the same subject matter; (4) the capacities of the parties are the same to the subject matter and issues between them; and (5) a final judgment on the merits has been entered.

*Denturist Ass'n of Mont.*, ¶ 11. The application of claim preclusion to a party who was not a party in the prior suit may conflict with "deep-rooted historic traditions that everyone should have their day in court." *Denturist Ass'n of Mont.*, ¶ 14 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892-93, 128 S. Ct. 2161, 2171 (2008)). This exception, however, applies only where "two parties are so closely aligned in interest that one is the virtual representative of the other . . . ." *Denturist Ass'n of Mont.*, ¶ 14 (quoting *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1405 (9th Cir. 1993)). Claim preclusion bars claims which were or *could* have been litigated in the prior suit. *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 18, 366 Mont. 78, 285 P.3d 494; *Denturist Ass'n of Mont.*, ¶ 11. Claim preclusion therefore "applies where the second suit arises from the same underlying basis or subject

7

matter as the first suit." *Brilz*, ¶ 23. We have described the underlying basis or subject matter as "one transaction" or "a natural grouping or common nucleus of operative facts." *Brilz*, ¶ 24 (quoting Restatement (Second) of Judgments § 24 (Am. L. Inst. 1982)). Thus, where a common nucleus of operative facts causes a number of harms to the same party, there is still but one transaction. *Brilz*, ¶ 24.

¶12 Here, all elements of claim preclusion are met. The parties or their privies are the same because the first suit involved the Kahles individually and the Estate, and in all relevant events Korrie acted solely in her capacity as personal representative of the Estate. Korrie had a fiduciary duty to preserve the Estate's resources and did so when pursuing the Estate's legal claims against the Kahles. The Kahles do not allege any facts involving Korrie acting in her individual capacity and not as the personal representative of the Estate. The subject matter and past actions here involve the forgery of the 2019 Lease/Option and resulting damages, the eviction process and any damages arising therefrom, and the Kahles' abandonment of their personal property at the Trego Property. We affirmed the District Court's conclusion that the Estate lawfully observed the MRLTA in its dealings with the Kahles, including their personal property. The prior suit provided the Kahles with a full opportunity to press their claims for damages for conversion and infliction of harm as they advanced their interpretation of the facts throughout these proceedings, including at a two-day bench trial. The argument that because the Kahles did not discover until trial that Korrie allegedly used some of their personal property to furnish the Trego Property for short-term rental purposes is unavailing because the purpose that a tortfeasor puts converted property to is irrelevant and does not alter the injured party's claims to relief. In

8

addition, the Kahles had a full opportunity to conduct discovery to further investigate their claims. The issues here are the same and relate to same subject matter, namely: title and possession of the Trego Property, damages stemming from the Kahles' forgery of the 2019 Lease/Option and slander of title, and damages arising under the MRLTA. The capacities of the parties are the same to the subject matter and issues involved because Korrie acted as the personal representative of the Estate in all of her dealings with the Kahles. The Kahles pressed their claim for damages related to their personal property and under the MRLTA against the Estate in the first suit. Last, the District Court issued its final judgment on the merits on June 26, 2025, based on its February 19, 2025 Findings of Facts and Conclusions of Law which concluded that Edward committed actual fraud on the Estate and the Estate reasonably and lawfully observed the MRLTA in its post-eviction dealings with the Kahles. Accordingly, the Kahles' claims filed in DV-25-38 are precluded under claim preclusion.

¶13 Korrie lost her mother in May 2021 and has since been forced into protracted litigation by a non-family member who attempted to usurp title and possession to the Trego Property under the auspices of a forged document containing a copy of her mother's signature. The issues between the Kahles, the Estate, and Korrie involving the Trego Property have been fully litigated and must now come to a definite end. The Estate and Korrie are entitled to closure on this matter.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶15 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON